**BANK OF ILLINOIS, also known as Bankillinois, and Tammy Shepard, as Co–Guardians of the Estate of Shad Shafer, a disabled person, Plaintiffs–Appellants,**

v.

**ALLIED SIGNAL SAFETY RESTRAINT SYSTEMS, a corporation, Defendant–Appellee.**

Nos. 95–1470, 95–1532.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1995.

Decided Feb. 2, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied April 16, 1996.

Joseph Phebus, Nancy J. Glidden (argued), Thomas F. Koester, Phebus, Winkelmann, Wong, Bramfeld & Zopf, Urbana, IL, for Plaintiffs–Appellants.

Mark S. Schuver, William A. Schmitt, Thomas F. Hennessy, III (argued), Thompson & Mitchell, Belleville, IL, for Defendant–Appellee.

Before BAUER, CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Tammy Shepard, on behalf of her disabled son Shad, filed suit against Allied Signal to recover damages for injuries he sustained when the Jeep in which he was riding overturned and threw him from the vehicle. Allied Signal, the manufacturer of the seat belts in the Jeep, filed a motion for summary judgment on the basis of statements made by Shad's parents that he had not been wearing his seat belt at the time of the accident. Allied Signal contended that the parents' later statements to the contrary could not be considered. Relying upon our decision in *Adelman–Tremblay v. Jewel Companies,* 859 F.2d 517 (7th Cir.1988), the district court entered summary judgment for Allied Signal. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

On the afternoon of December 31, 1990, Don Shepard was visiting his fiancée, Tammy Shafer, at her home in Champaign, Illinois.[1] Mr. Shepard and Ms. Shafer, who had been dating for several months, each had children from prior marriages. Ms. Shafer's eleven year-old son Shad was present for Mr. Shepard's visit. At approximately 12:30 p.m., Mr. Shepard prepared to leave for nearby Tolono to pick up one of his children. It was decided that Shad would accompany Mr. Shepard on the trip.

Mr. Shepard and Shad left the house and got into Mr. Shepard's Jeep CJ–7 which was parked in the garage. Ms. Shafer was also

---

1. Following the events giving rise to this action but prior to the commencement of litigation, Mr. Shepard and Ms. Shafer were married. At the appropriate point in the discussion, therefore, the opinion will refer to Tammy Shafer as Mrs. Shepard and to Don and Tammy collectively as the Shepards.

present in the garage when Mr. Shepard and Shad entered the Jeep. The Jeep then exited the garage and began the short trip to Tolono. At some point during the trip, Mr. Shepard lost control of the vehicle. The Jeep slid out of control, left the roadway, and proceeded to roll over, throwing Mr. Shepard and Shad from the vehicle. The Jeep ultimately came to rest on its side, pinning Shad underneath. Mr. Shepard and Shad were both hospitalized for their injuries. After undergoing treatment and surgery, Mr. Shepard was released on January 7, 1991. The accident rendered Shad, who had suffered a basilar skull fracture and injuries to his brain from a cardiorespiratory arrest, unable to communicate.

2. Officer Miholic testified as follows:

Q: Okay. Do you recall at the scene of the accident whether he mentioned anything about whether or not his passenger, Shad Shafer, was wearing a seat belt?

A: If I recall, I don't think either one of them had a seat belt on from what I gathered from what he told me.

\* \* \* \* \* \*

Mr. Belofsky: What we're trying to get out right here is your recollection of what Mr. Shepard might have said, and do you recall him saying that Shad Shafer did not have a seat belt on at the time of the accident?

A: If I recall, the substance was that neither one of them had a seat belt, but I don't know exactly how he said it.

R. 77, Deposition of Dale Miholic, Ex. F at 31.

3. Officer Weston testified:

Q: Can you tell me, to the best of your recollection, what you said to him and what he said to you?

A: I think I told him what I had done out at the accident scene and I just wanted him to briefly go over what he experienced there. And he told me that he was southbound on Mattis, and that he believed, according to my report here, he said that he was traveling about 20 miles an hour and that he just started to slide and started to go over towards the ditch and he tried to brake or tried to avoid hitting the embankment head on, but he really had no control over it and that's when he hit it. I think at that time and I am guessing—I am not guessing, I am just saying that I believe he told me at that time that they weren't wearing seat belts. So that's why I had that code for ["safety belts not used"] on the front [of the accident report].

R. 77, Deposition of Robert Weston, Ex.H at 70–71.

In the hours and days following the accident, Mr. Shepard made statements to various third parties that he and Shad had not been wearing their seat belts. According to the deposition testimony of Officer Dale Miholic, who had spoken to Mr. Shepard at the scene of the accident, Mr. Shepard told him that Shad had not been wearing his seat belt at the time of the accident.[2] Officer Robert Weston, who had investigated the accident and had spoken to Mr. Shepard at the hospital,[3] and Detective Zane Ziegler, a police officer who had sold Mr. Shepard the Jeep,[4] gave similar deposition testimony. At the hospital, Mr. Shepard also told Cheryl Shepard, his former wife, that Shad had not been wearing his seat belt.[5]

4. At Detective Ziegler's deposition, the following exchange took place:

Q: That night in the hospital did he for any reason mention whether or not he or Shad Shafer were wearing seat belts?

A: He said that he did not have a seat belt on, that Don himself did not have one on. I think he said that Shad didn't either, but I can't remember for sure.

R. 77, Deposition of Zane Ziegler, Ex.G at 62.

5. At her deposition, Cheryl Shepard testified:

Q: Okay. Can you tell me to the best of your recollection what he said?

A: He said that he was in a hurry to meet me in Tolono, that he was driving rapidly, that the roads were slick, told me that he was on whatever road it was, I think it was Windsor, that it was slick, he had reached down to put the Jeep in four-wheel drive, that he had lost control and when he went into the ditch, the snowplow caught the corner of the ditch, caused the Jeep to flip. He said that he was thrown out and that the Jeep had rolled over him and that Shad had been thrown out and that he found Shad laying underneath the Jeep. He said that he tried to push the Jeep off of Shad. He said something about trying to flag down a passerby motorist and that he ended up calling for assistance himself on his own radio. He indicated that he had not seat belted either of them in.

Q: Either of them being him or his passenger, Shad Shafer?

A: That's correct.

\* \* \* \* \* \*

Q: Did he say anything else about his use of the seat belt or Shad Shafer's use of the seat belts?

A: That they—neither one of them were seat belted in, that he had been in a hurry he was—he hadn't thought about it. He was—just had not done that.

Ms. Shafer also made statements to third parties that Shad had not been wearing a seat belt. According to the deposition of Sandra Kline, Shad's home care nurse, "[Ms. Shafer] just told me that Shad was riding in an open Jeep, that he was not wearing a seat belt, that her fiance was driving the Jeep." R. 77, Deposition of Sandra Kline, Ex. N at 8–9. On November 19, 1991, Mrs. Shepard, as Guardian of the Estate of Shad Shafer, and Mr. Shepard filed their original complaint. The original complaint, which named only Chrysler Corporation and Bestop as defendants, did not allege that the seat belts in the Jeep were defective.[6]

Six days after the complaint was filed, Mr. Shepard testified at a child custody hearing concerning his children from the prior marriage. Mr. Shepard, who was represented by counsel, testified under oath that neither he nor Shad had been wearing a seat belt at the time of the accident. When questioned further about the accident, he stated: "Inadvertently that day we were talking and just did not put on our seat belts." R. 77, Custody Hearing Transcript, Ex. K at 175.

In December of 1991, defendant Bestop served interrogatories on the plaintiffs. Mrs. Shepard responded to the interrogatories on Shad's behalf. Interrogatory No. 57, together with Mrs. Shepard's response, reads:

57. If at the time of the occurrence referred to in the complaint the vehicle occupied by you was equipped with seat belts or shoulder harnesses, state:

(a) Whether the seat belt or shoulder harness was being worn by you and if so, what was worn;

(b) If either the shoulder harness or seat belt was not worn by you, why each was not worn;

(c) The position in the car where you were seated;

(d) Your height and weight at the time.

*Answer:*

A. No.

B. Inadvertence.

R. 77, Deposition of Cheryl Lynn Shepard, Ex. J at 10–11.

6. The complaint, originally filed in the Circuit Court for the Sixth Judicial District, Champaign

C. Passenger in front.

D. 4′10″, 65 pounds.

R. 77, Answers to Interrogatories, Ex. A at 27.

On March 18, 1993, the district court granted the plaintiffs' motion for leave to file an amended complaint. The amended complaint, which added Allied Signal as a defendant, alleged for the first time that Shad had been wearing a seat belt at the time of the accident.

In a subsequent deposition, Mr. Shepard testified that he and Mrs. Shepard had decided to amend the complaint after acquiring additional information about seat belts and their propensity to release during impact. He identified the source of this additional information as a segment from a television program entitled "Street Stories." The segment, which had been shown to them by their attorney, illustrates how certain types of seat belts can open unexpectedly in certain types of impacts. His earlier statements that Shad had not been wearing a seat belt, Mr. Shepard explained, were mere conclusions drawn from the fact that Shad had been thrown from the Jeep. Now that he had a more complete understanding of the relevant facts—that certain types of seat belts were subject to inertial release—he could explain how Shad, who customarily wore his seat belt, had ended up outside the Jeep. Mr. Shepard further stated that, although he had not actually seen Shad buckle his seat belt, he had seen Shad reaching down between the seats for the belt prior to exiting the garage and had heard a metal "clang." Mr. Shepard testified that, based on these observations, he believed that Shad was wearing his seat belt on the day of the accident.

The parties also took the deposition of Mrs. Shepard after the amended complaint was filed. Like her husband, Mrs. Shepard testified that she had changed her position concerning Shad's use of the seat belt.

County, Illinois, was later removed to the United States District Court for the Central District of Illinois.

When asked what had changed her mind, she indicated that the "Street Stories" segment had provided her with additional information on how seat belts could release unexpectedly. Mrs. Shepard further testified that, on the day of the accident, she had seen Shad turn around in the passenger seat and bend over as if reaching for the seat belt and she had heard a "clanking noise" before the Jeep exited the garage. Mrs. Shafer also stated that Shad always wore his seat belt when traveling in a car. She admitted, however, that she had not actually seen Shad wearing his seat belt or holding any part of the seat belt in his hand on the day of the accident.

### B. Proceedings in the District Court

Allied Signal filed a motion for summary judgment on the ground that Mr. and Mrs. Shepard, the only eyewitnesses to the occurrence, had previously admitted to numerous witnesses and in court that Shad was not wearing his seat belt at the time of the accident. The plaintiffs, who had responded to the summary judgment motion by filing copies of the Shepards' depositions taken after the amended complaint, argued that Shad, in whose name Allied Signal was sued, had not admitted anything and could not be bound by their statements. Even if the prior statements could be considered admissions, they argued, the statements are "ordinary" and not "judicial" admissions and are thus subject to rebuttal by other evidence. Neither Mr. Shepard nor Mrs. Shepard had actual knowledge of whether Shad was wearing his seat belt; they merely had been speculating when they spoke. They argued that their prior statements, which had been made without personal knowledge, amount only to lay witness reconstruction testimony and, as such, lack the required foundation for use as substantive evidence.

The district court rejected the plaintiffs' argument that the prior statements lacked evidentiary foundation and could be used only for impeachment purposes. Such an argument, the court noted, is a "red herring" for purposes of the summary judgment motion. Even if the Shepards' prior statements do not bind Shad as admissions, the district court continued, Mr. and Mrs. Shepard are still the only possible witnesses to the occurrence and each had made clear statements that Shad was not wearing his seat belt. Citing *Adelman–Tremblay v. Jewel Companies*, 859 F.2d 517 (7th Cir.1988), the court applied the "well-settled rule" that "a party may not establish a *genuine* issue of fact solely by pointing to witness' recantations of prior unequivocal statements." R. 115, Order of July 14, 1994, at 4 (emphasis in original). Careful to note that it was not passing on the Shepards' credibility, the court entered summary judgment in favor of Allied Signal.

### C. Contentions of the Parties

1.

The plaintiffs contend that the admissible substantive evidence could lead a jury to conclude that Shad was wearing his seat belt on December 31, 1990. The district court, they submit, improperly considered evidence that was altogether inadmissible or which would be admissible only for impeachment purposes. First of all, they argue that the Shepards' statements to third parties are hearsay and thus inadmissible for substantive purposes. Moreover, the plaintiffs continue, Mr. and Mrs. Shepard were not witnesses to the occurrence. Because neither of them observed Shad without his seat belt on, their earlier statements that he had not been wearing his seat belt amount only to "lay-witness reconstruction testimony" that would be inadmissible at trial for want of a proper foundation. These statements therefore should not have been considered for purposes of summary judgment.

Sworn interrogatory answers may be considered in conjunction with a summary judgment motion only if the person answering the interrogatory had personal knowledge or was competent to testify as to the matters stated. *S & S Logging Co. v. Barker*, 366 F.2d 617 (9th Cir.1966). Because Mrs. Shepard did not see whether Shad completed the process of putting on his seat belt, the plaintiffs argue, her answer to the interrogatory was not based on personal knowledge and could not be considered. Essentially the same argument is made with respect to Mr. Shepard's testimony at the custody hearing.

The only evidence having a proper evidentiary foundation, the plaintiffs argue, supports the view that Shad was wearing a seat belt. In their view, the deposition testimony of Mr. and Mrs. Shepard was not an attempt to recant prior statements; rather, the testimony set forth for the first time their observations of Shad's interaction with the seat belt. Unlike their initial statements, which were mere conclusions drawn from the fact that Shad had been thrown from the Jeep, Mr. and Mrs. Shepard had a more complete understanding of relevant facts at the time of their depositions. Specifically, the plaintiffs contend, the Shepards became aware that the type of seat belt found in the Jeep was susceptible to inertial release. In the plaintiffs' view, their deposition testimony, which includes statements that Shad customarily wore his seat belt, provides sufficient circumstantial evidence of seat belt use to preclude summary judgment.

*Adelman–Tremblay,* the plaintiffs argue, does not prevent the district court from considering the deposition testimony. Unlike the prior statements in that case, which the court labeled "a model of clarity," *Adelman–Tremblay,* 859 F.2d at 520, the Shepards' prior statements are ambiguous and thus subject to subsequent clarification. Unlike the present case, in *Adelman–Tremblay* there were "two compelling reasons" to disallow the contradiction of earlier statements: (1) there was no newly discovered evidence; and (2) the witness had not lacked access to material facts. *See id.* By contrast, the plaintiffs argue, this case involves prior statements made before the Shepards had access to a material fact: the seat belt's propensity for inertial release. Thus, the plaintiffs argue, there is no recantation; there is only explanation. Also unlike *Adelman–Tremblay,* their subsequent statements were not made at the eleventh hour during the pendency of a summary judgment motion.

In the plaintiffs' view, the district court's opinion implies that the Shepards' statements were considered as admissions against Shad. Because those statements were nei-

ther made nor adopted by a party, the plaintiffs argue, they are not admissions chargeable against Shad. Finally, because the statements did not concern facts within the peculiar knowledge of the party making them, they are not judicial admissions and are thus subject to rebuttal.

2.

At the outset, Allied Signal argues, the district court expressly stated that its ruling was not based on a finding that the Shepards' statements were "judicial admissions" binding on Shad. Rather, it argues, the district court correctly applied the well-established rule that a party may not establish a genuine issue of fact solely by pointing to witnesses' recantations of prior unequivocal statements. The Shepards' statements were clear and unequivocal; their content is not in dispute. Moreover, Allied Signal contends, a strict application of *Adelman–Tremblay* is warranted by the fact that two of the prior statements—Mrs. Shepard's answer to the interrogatory[7] and Mr. Shepard's testimony at the custody hearing—were made under oath. *See Donohoe v. Consol. Operating & Prod. Corp.,* 736 F.Supp. 845, 861 (N.D.Ill. 1990), *aff'd in relevant part,* 982 F.2d 1130 (7th Cir.1992).

The "Street Stories" segment, Allied Signal continues, is not "newly discovered evidence" and does not justify departure from the *Adelman–Tremblay* rule. Nothing in the segment establishes that Shad was wearing his seat belt on December 31, 1990; Shad Shafer is not even mentioned in the segment. Similarly, the Shepards' lack of awareness of inertial release provides no evidence on whether Shad had on his seat belt. If Mr. and Mrs. Shepard, as the only occurrence and pre-occurrence witnesses, are now capable of testifying that they observed Shad "apparently putting on his seat belt," then they were equally competent to make the prior statements that Shad was not wearing his seat belt.

---

**7.** According to Allied Signal, appellant's reliance on *S & S Logging Co.* is misplaced. The Shepards and their attorney had ample time to investigate the facts of this case before Tammy responded to the interrogatory. Under these circumstances, it cannot be said that she answered "without knowledge."

With the subsequent recantations properly excluded, Allied Signal contends, the plaintiffs had not made out an element of their prima facie case—that Shad was wearing a seat belt. Summary judgment, it urges, was properly granted.

## ·II

### DISCUSSION

#### A. ·

 We review a district court's grant of summary judgment de novo. *Green v. Shalala*, 51 F.3d 96, 99 (7th Cir.1995). A grant of summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not a remedy to be exercised at the court's option; it must be granted when there is no genuine disputed issue over a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, then summary judgment will not lie. *Id.*

For purposes of Allied Signal's motion for summary judgment, the determining issue for the district court was whether Shad Shafer had been wearing his seat belt on December 31, 1990. Allied Signal, of course, was under no obligation to negate the plaintiffs' claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (although party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record, if any, which it believes demonstrate the absence of a material fact, there is nothing in Rule 56 that requires a moving party to negate an essential element of an opponent's claim for which the opponent will

bear the ultimate burden at trial). Instead, the plaintiffs bore the burden, as the parties opposing the motion, of coming forward with affirmative evidence proving their allegation that Shad was wearing his seat belt.

#### B.

In order to satisfy their burden as the non-moving party, the plaintiffs offer the Shepards' deposition testimony stating their current belief that Shad had been wearing the seat belt, as was his habit. Allied Signal, and the district court, take the view that this testimony could not be considered because it directly contradicts their prior clear statements. It is here that we begin our analysis.[8]

Were the conflict at issue between statements given by two separate individuals, summary judgment would be inappropriate because the district court may not weigh conflicting evidence. *Babrocky v. Jewel Food Co. & Retail Meatcutters Union*, 773 F.2d 857, 861 (7th Cir.1985). The situation is quite different, however, when a witness has contradicted directly his or her own earlier statements without explaining adequately the contradiction or without attempting to resolve the disparity.

We note that the Shepards' deposition testimony contradicts two distinct categories of prior statements: (1) those made to third parties; and (2) those made under oath in the context of judicial proceedings. As the following discussion explains, it is the fact that their testimony contradicts the second category of statements that renders them ineffective to preclude summary judgment.

 We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating "sham" issues of fact with affidavits that contradict their prior depositions. *See, e.g., Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir.1987); *Babrocky*, 773 F.2d at 861; *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir.1985). If such contradictions were permitted, we

---

**8.** We agree with Allied Signal that, if Mr. and Mrs. Shepard, as the only occurrence and pre-occurrence witnesses, are now capable of testifying that they observed Shad "apparently putting

on his seat belt," then they were equally competent to make the prior statements that Shad had not been wearing his seat belt.

reasoned, "the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut." *Babrocky,* 773 F.2d at 861; *see Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364 (8th Cir.1983).

Prior to *Adelman–Tremblay,* the rule against submitting affidavits that contradict prior depositions had been applied only to parties. *See, e.g., Diliberti,* 817 F.2d at 1263; *Babrocky,* 773 F.2d at 861; *Miller,* 766 F.2d at 1104. Concluding that the same policy considerations would be served, we extended this rule beyond the parties to include statements made by witnesses that contradict their prior deposition testimony. *Adelman–Tremblay,* 859 F.2d at 521; *see also Garnac Grain Co. v. Blackley,* 932 F.2d 1563 (8th Cir.1991).

The cases to which we have applied this rule, however, have all involved prior statements that were made under oath. *See, e.g., Russell v. Acme–Evans Co.,* 51 F.3d 64, 67–68 (7th Cir.1995) (deposition); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1297 (7th Cir.1993) (same); *Essick v. Yellow Freight Systems, Inc.,* 965 F.2d 334, 335–36 (7th Cir. 1992) (sworn testimony before state agency); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 237 (7th Cir.1991) (deposition); *Richardson v. Bonds,* 860 F.2d 1427, 1433 (7th Cir.1988) (deposition and sworn statement filed under local rule); *Adelman–Tremblay,* 859 F.2d at 520 (deposition); *Diliberti,* 817 F.2d at 1263 ("[I]t is well established that a party cannot create a genuine issue of material fact by submitting an affida-vit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony.") (deposition); *Babrocky,* 773 F.2d at 861 (same); *Miller,* 766 F.2d at 1104 (same); *see also Donohoe,* 982 F.2d at 1136 n. 4 (answers to interrogatories).[9] If the district court was correct in disregarding the Shepards' deposition testimony, therefore, it was because the testimony conflicted with their prior statements given under oath and not because it conflicted with statements they had made to the various third parties.

We are mindful that, in light of the jury's role in resolving questions of credibility, other circuits have cautioned that this rule ought to be applied with great caution. *See Kennedy,* 952 F.2d at 266 (noting that a number of the circuits have "urged caution" in applying this rule).[10] Indeed, we also have noted that such caution is appropriate. *See Choudhry v. Jenkins,* 559 F.2d 1085, 1090 (7th Cir.) (noting that testimony at hearing on temporary restraining order was not a sham when analyzed in light of an administrative hearing transcript), *cert. denied,* 434 U.S. 997, 98 S.Ct. 634, 54 L.Ed.2d 491 (1977). The reasons for this caution have been articulated with great clarity by our colleagues both in other circuits and in this one. In *Tippens v. Celotex Corp.,* 805 F.2d 949 (11th Cir.1986), the Court of Appeals for the Fifth Circuit noted, in pragmatic terms, the need for such caution:

> A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create

---

**9.** We note that the cases from our sister circuits have followed a similar pattern of restricting application of the rule to prior sworn statements. *See, e.g., Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987) (deposition); *Hackman v. Valley Fair,* 932 F.2d 239 (3d Cir.1991) (same); *Rohrbough v. Wyeth Labs., Inc.,* 916 F.2d 970, 975 & n. 9 (4th Cir.1990) (same); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 315 (6th Cir. 1989) (same); *Camfield Tires,* 719 F.2d at 1364 (same); *Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991) (same); *Pyramid Secs. Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1123 (D.C.Cir.) (affidavit), *cert. denied,* 502 U.S. 822, 112 S.Ct. 85, 116 L.Ed.2d 57 (1991).

**10.** In *Kennedy,* the Ninth Circuit held that, before applying the rule, the district court must make a factual determination that the contradiction was actually a "sham." *Id.* at 267. The Tenth Circuit follows a similar approach. *See Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1010 n. 2 (10th Cir.1992); *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986). As we note in the text, although we have not required such an explicit finding, our cases make clear that the general rule does not apply to every instance when a later affidavit contradicts prior sworn testimony. As discussed *infra,* the rule applies only to cases in which the statements are inherently inconsistent and in which the contradiction is not the result of an honest discrepancy or newly discovered evidence.

an issue of credibility or go to the weight of the evidence.

\* \* \* \* \* \*

The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended. To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact.

*Id.* at 953. On the other hand, Judge Clark, writing for the Eleventh Circuit in *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656 (11th Cir.1984), underlined the countervailing need to ensure that the salutary purposes of summary judgment practice are not undermined:

Under these facts as presented, we agree with the district court that the affidavit constituted a sham. When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.

*Id.* at 657.

Our own cases also reflect an awareness of the competing concerns that must be assessed in determining whether a subsequent statement so squarely contradicts an earlier one as to create only a sham issue of fact. In

*Miller v. A.H. Robins Co.,* 766 F.2d 1102 (7th Cir.1985), Judge Harlington Wood, Jr., relying upon *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572, 577–78 (2d Cir.1969), noted that a party ought not be able to thwart a summary judgment by "creating issues of fact through affidavits that contradict their own depositions." *Miller,* 766 F.2d at 1104. He added, however, that an inconsistent affidavit might preclude summary judgment "if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence." *Id.*

The same considerations had to be balanced by Judge Easterbrook when he wrote for the court in *Pries v. Honda Motor Co.,* 31 F.3d 543 (7th Cir.1994). In *Pries,* a woman lost control of her automobile, was thrown clear when the vehicle rolled over, and sustained serious injuries. *Id.* at 543–44. Contending that the seat belt mechanism was defective, she brought suit against the manufacturer of the car. During her deposition Pries testified that, when asked at the scene whether she had been wearing a seat belt, she answered "no." *Id.* She further stated that "I told them no, because I didn't think I could have got out of the car if I had it on." *Id.* The district court entered summary judgment for the defendant; after conceding at her deposition that she did not fasten her seat belt, the district court reasoned, she should not be allowed to pursue a claim based on a contrary assertion. *Id.* at 545. In reversing the judgment of the district court, this court found it significant that Pries had said from the outset that she could not remember whether she had fastened her seat belt; her deposition recounted that she told her rescuers she was not belted in only because she could not imagine how she could have been thrown from the car if she had worn one. *Id.* [11] We found equally signifi-

---

11. Our conclusion in *Pries* is consistent with the decision of the Fifth Circuit in *Kennett–Murray Corp. v. Bone,* 622 F.2d 887 (5th Cir.1980). There a subsequent clarification was permitted because the ambiguity existed on the face of the prior statement. The party submitted an affida-

vit conflicting with that party's earlier deposition testimony, but only because the affidavit explained certain aspects of the deposition by clarifying ambiguities created by confusing questioning. *Id.* at 894. The court noted that the alleged inconsistency existed within the deposition itself;

cant the fact that Pries was later confronted with physical evidence that she had been wearing a seat belt, as was her habit. "[T]he principal evidence that Pries wore her seat belt is physical," we explained, "and the striations in the webbing need not explain why *they* contradicted the driver's remarks." *Id.*

We must now evaluate the situation before us in light of the methodology established by our earlier cases. The Shepards gave two sworn statements that speak to the question of whether Shad had been wearing his seat belt: (1) Mr. Shepard's testimony at the child custody hearing; and (2) Ms. Shepard's answers to defendant Bestop's interrogatories. We turn, therefore, to a determination of whether these statements do in fact conflict with their deposition testimony.

Mr. Shepard testified at the child custody hearing six days after the original complaint was filed. He was represented by counsel at the hearing. During the course of his testimony under oath, the following exchange took place:

> Q. Were either of you wearing your seat belts?
>
> A. No.

R. 77, Custody Hearing Transcript, Ex. K at 138. When questioned further in this regard, he stated: "Inadvertently that day we were talking and just did not put on our seat belts." *Id.* at 175.

Mrs. Shepard, with aid of her attorney, answered Bestop's interrogatories under oath. In response to Interrogatory No. 57, set out in full below, Mrs. Shepard gave the following response:

> 57. If at the time of the occurrence referred to in the complaint the vehicle occupied by you was equipped with seat belts or shoulder harnesses, state:
>
> (a) Whether the seat belt or shoulder harness was being worn by you and if so, what was worn;

the question of fact, therefore, was appropriately raised by the deposition even without consideration of the subsequent statement. *Id; see also Russell,* 51 F.3d at 68 (subsequent contradiction is to be disregarded "unless it is demonstrable

> (b) If either the shoulder harness or seat belt was not worn by you, why each was not worn;
>
> (c) The position in the car where you were seated;
>
> (d) Your height and weight at the time.
>
> *Answer:*
>
> A. No.
>
> B. Inadvertence.
>
> C. Passenger in front.
>
> D. 4'10", 65 pounds.

R. 77, Answers to Interrogatories, Ex. A at 27. At their depositions, however, Mr. and Mrs. Shepard expressed a contrary view. Citing the "Street Stories" segment and evidence of Shad "apparently putting on his seat belt" as having changed their minds, each testified to a belief that Shad had been belted in during the accident.

Under these circumstances, we have no difficulty concluding that there is an inherent inconsistency between the Shepards' prior sworn statements and their later deposition testimony. It is immediately clear that the sworn statements are unequivocal in their assertion that Shad was not wearing his seat belt; they leave no room for even the possibility that the seat belt was worn. Moreover, the statements contain no mention of the Shepards' suspicion, supposedly felt all along, that Shad had been wearing the belt or their observations of Shad apparently handling the seat belt. Having concluded that the Shepards' deposition testimony directly contradicts their earlier sworn statements, we turn to their explanation of the contradiction.

■ In the past, as a result of balancing the competing considerations outlined in the earlier paragraphs, we have allowed a party to avoid summary judgment through a statement that contradicts an earlier sworn statement in only a limited number of circumstances. *See Slowiak,* 987 F.2d at 1297; *Adelman–Tremblay,* 859 F.2d at 520. For example, a subsequent affidavit may be allowed to clarify ambiguous or confusing testi-

that the [earlier] statement ... was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy").

mony. *Adelman–Tremblay,* 859 F.2d at 520; *Babrocky,* 773 F.2d at 861; *see Russell,* 51 F.3d at 68. A contradictory supplemental affidavit is also permissible if it is based on newly discovered evidence. *Adelman–Tremblay,* 859 F.2d at 520. The plaintiffs attempt to fit the Shepards' deposition testimony within one of these limited circumstances. The prior statements, the plaintiffs contend, were merely conclusions drawn from the fact that Shad had been thrown from the Jeep. Moreover, because the statements were made before the Shepards had access to a material fact—the seat belt's propensity for inertial release—they should be allowed to explain their prior assertions in later statements.

Upon careful review of the record as a whole, we discern none of the circumstances that would justify a departure from the usual rule. To the extent that the plaintiffs argue that the Shepards' deposition testimony clarifies ambiguities in their prior statements, we disagree; the Shepards' sworn statements, like the deposition testimony at issue in *Adelman–Tremblay,* are "model[s] of clarity." [12] Rather than reflecting any confusion that might require explanation, their sworn statements are clear answers to unambiguous questions on the issue of causation. Having already spoken clearly on the issue of causation under oath, the Shepards may not contradict these statements absent "new evidence." Rather than reflecting "new evidence" of Shad's seat belt use, their deposition testimony merely seeks to explain why their prior statements were made and what information, previously available to them, eventually changed their minds.

In our view, this is not the sort of "new evidence" that would justify departure from the normal rule. Indeed, a comparison of this case with *Pries* points up the infirmities present here. In contrast to this case, Pries'

deposition testimony included an explanation that she had only surmised the seat belt had not been worn. In the present case, however, we are confronted with prior sworn statements that unequivocally state Shad was not wearing his seat belt and give reasons for the omission. Mrs. Shepard listed "inadvertence" for Shad's failure to wear his seat belt. Mr. Shepard explained that, "[i]nadvertently that day we were talking and just did not put on our seat belts." R. 77, Custody Hearing Transcript, Ex. K at 175. Just as importantly, unlike *Pries,* the plaintiffs have presented no hard physical evidence of seat belt use that would evoke clarification of earlier speculations. Although the lawyer's movie suggested why seat belts, if fastened, might malfunction in a crash, the movie added no additional physical evidence to this case. The burn marks on Ms. Pries gave very potent physical evidence that the seat belt in her vehicle had been engaged.

### C.

Disregarding, then, those portions of the depositions that contradict the Shepards' prior sworn statements, the plaintiffs are left with no evidence that Shad was wearing his seat belt at the time of the accident. Because the plaintiffs failed to present any evidence to establish this essential element of their prima facie case, the district court correctly entered summary judgment in favor of Allied Signal.

### Conclusion

For the foregoing reasons, we conclude that the district court correctly applied our decision in *Adelman–Tremblay* to the sworn statements in the present case.[13] Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

12. Plaintiffs contend that several of the Shepards' prior statements are fraught with ambiguity. To this end, plaintiffs direct our attention to that portion of Mr. Shepard's deposition testimony in which he attempts to correct alleged ambiguity in the statement given to Mr. Langfelder, the insurance adjuster. In light of our conclusion that only the prior sworn statements are operative to bar consideration of the deposition

testimony, however, we need not consider any ambiguities in the statements made to the third parties.

13. We also note that our analysis, like that of the district court, is not based on a finding that the Shepards' statements are "judicial admissions" binding upon Shad.

CUDAHY, Circuit Judge, concurring:

Whether an evidentiary submission is a "sham" to be disregarded on summary judgment is an elusive question that may benefit from a more elaborate analytical framework than presented by the majority. The majority is correct in indicating that the problem is in weighing the general rule of submitting credibility determinations to the jury against the policy of discouraging unjustifiable efforts to defeat summary judgment. The classic pattern for such an effort is the submission of an affidavit opposing summary judgment which contradicts an earlier statement (most commonly, an earlier deposition). See, e.g., Adelman–Tremblay v. Jewel Companies, Inc., 859 F.2d 517 (7th Cir.1988). When a party seeks to create an issue of fact by simply submitting an affidavit which directly contradicts a witness' earlier sworn comments, a court rightly ignores the later submission since it creates no genuine factual dispute. To view such a submission as creating a genuine issue of material fact might severely diminish the availability of summary judgment as a useful procedure.[1]

It is easy to determine that an affidavit produced in response to a summary judgment motion in contradiction of a prior statement is a "sham" because such an affidavit is not difficult to produce and because it pops up in the immediate context of summary judgment. In line with this thinking, it should be an important condition of finding a submission to be a "sham" that it be proffered for the purpose of defeating summary judgment. If this condition is not met, the policy of preserving the utility of summary judgment procedure is not implicated and there is no reason to depart from the general rule that credibility determinations are for the jury. The mere fact that a witness makes contradictory statements is not enough. This emphasis on purpose is implicit in holdings like that of the Ninth Circuit in Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991), that the existence of a "sham" must be found as a fact by the district court. Whether a later submission is a "sham" is not entirely a matter of how baldly the second statement contradicts the first or how easily the two may be reconciled in light of new evidence. As the Ninth Circuit emphasized in Kennedy, the concern is "with 'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." Id. at 267.

In the present case the questionable statements were made in depositions taken prior to the filing of the summary judgment motion. They contradicted even earlier sworn statements. As I have noted, an affidavit opposing summary judgment which contradicts an earlier statement is the paradigm situation characterizing the vast majority of cases. It appears that only in this circuit has the rule been extended to encompass a situation in which the questionable statements were not made in response to a summary judgment motion. Essick v. Yellow Freight Systems, Inc., 965 F.2d 334 (7th Cir.1992).

In the current case the immediate purpose of the deposition containing the questionable statements was to support an amended complaint alleging a defective seat belt. The motion for summary judgment was not filed until six months after the deposition. Hence, the purpose to defeat summary judgment is not as clear as in the case of an affidavit contradicting a deposition and submitted in opposition to summary judgment. Here, of course, the effect of the deposition would be to defeat summary judgment and from this one might infer a purpose. Still, this is not as simple and clear a case as the deposition-affidavit paradigm. While Essick provides precedent for the application of the "sham submission" doctrine to the present case, there remains a question whether such extensions of the doctrine are entirely consonant with its limited underlying purpose. At the least, it would seem particularly important in this type of case to maintain a focus

---

1. "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."

Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991), quoting Perma Research and Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.1969).

on the *purpose* of the contradictory statements.

With respect to the other requisites of a "sham," that it be in sharp conflict with earlier statements and that it not be reconcilable with former versions on the basis of new information, the majority provides a plausible analysis. It is certainly not inconceivable, however, that in watching the video the Shepards first realized that a seat belt *could* open in an accident and therefore that Shad could have had his seat belt fastened and still have been thrown from the car. The strongest factor arguing against this explanation is the unequivocal nature of earlier statements by the Shepards. But we should not lose sight of the fact that, but for the summary judgment context, this would just be a matter of impeachment for the jury to consider.

Judge Baker did not explicitly find as a fact that the deposition evidence here was a "sham." I believe that this at least should be a requisite for rejecting sworn testimony. It is important to keep firmly in mind the general rule that credibility determinations are for the jury unless the new, conflicting evidence meets the specific requirements for finding it to be a "sham."

Although Judge Baker made no explicit finding here, such a finding is perhaps implicit in his determination and may be adequate for purposes of this case. But, based on first principles as I have tried to outline them, I think the result we reach here can be questioned. In light of the case law, however, which seems to have extended the doctrine considerably beyond its original scope involving a response to a summary judgment motion, Judge Baker's determination may be affirmed.