In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2295

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERIC JACKSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 3:07-cr-50043-1—**Philip G. Reinhard**, *Judge.*

ARGUED MAY 11, 2009—DECIDED AUGUST 6, 2009

Before CUDAHY, POSNER, and KANNE, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Eric Jackson was sentenced to a 96 month term of imprisonment for possession of a firearm by a previously-convicted felon. The gun that was the basis of the possession charge was found on Jackson's person when the police executed an arrest warrant for Jackson in an acquaintance's apartment where Jackson had been staying. On appeal, Jackson challenges the denial of his motion to suppress the gun

and the imposition of an above-Guidelines sentence. We affirm.

## I.  BACKGROUND

Eric Jackson was arrested by the Winnebago County Sheriff's Department based on an outstanding warrant for aggravated battery. After unsuccessfully attempting to locate Jackson at the residences of multiple relatives, the police received an anonymous tip that Jackson had been staying at his father's girlfriend's apartment on 1107 Elm Street and that he would be at that address the next day—June 1, 2007—in the early morning.

The police arrived at the apartment at approximately 8:30 in the morning, and were invited into the vestibule by LanDonna Joseph, the primary tenant. When the officers showed Jackson's picture to Joseph, she professed not to recognize him but the officers judged from her body language that she was lying. Still without entering the apartment, the officers next showed Jackson's picture to Tyneesha Barbary, who was sitting nearby. (As it happens, Barbary was Jackson's girlfriend and was pregnant with his child.) When the officers asked Barbary if Jackson was in the apartment, she started to cry and nodded her head. The officers subsequently entered the apartment and followed Barbary to a back bedroom where Jackson was sleeping with Barbary's daughter. After handcuffing Jackson, the officers searched the immediate area and found a pistol within grabbing distance under the blanket on which he had been sleeping.

Although he was initially arrested for aggravated battery, Jackson was ultimately charged in federal court with possession of a firearm by a previously-convicted felon in violation of 18 U.S.C. § 922. The district court denied Jackson's motion to suppress the gun that was seized during the arrest, finding that the search was lawful because the police reasonably believed that Jackson was within Joseph's apartment when they entered. Following the court's denial of his suppression motion, Jackson pleaded guilty. The court calculated his sentencing range as 37 to 46 months, but sentenced him to 96 months' imprisonment, more than twice the top of his Guidelines range. The court found that this sentence was necessary "to stop you before you kill somebody or before you get killed."

## II. DISCUSSION

### A. Jackson's Arrest

As a threshold matter, we reject Jackson's argument that the police needed a search warrant as well as an arrest warrant in order to enter Joseph's apartment in order to arrest him.[1] "[F]or Fourth Amendment purposes,

---

[1] Because a suspect has no reasonable expectation of privacy once an arrest warrant is issued, it is at least arguable that Jackson would not have standing to challenge an illegal entry into Joseph's home. *See, e.g., United States v. Kaylor*, 877 F.2d 658, 663 n.4 (8th Cir. 1989); *United States v. Buckner*, 717 F.2d 297, 299-300 (6th Cir. 1983). However, a leading treatise observes that if

(continued...)

an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 602 (1980). Of course, the warrant application process does not protect the Fourth Amendment interests of third parties. Thus, if officers enter a third party's residence in order to effect an arrest, the third party herself may have a Fourth Amendment claim against the officers. This is the holding of *United States v. Steagald*, 451 U.S. 204 (1981). However, in *Steagald*, the court was quite explicit that "the narrow issue before [the Court was] whether an arrest warrant—as opposed to a search warrant—is adequate to protect the Fourth Amendment interests *of persons not named in the warrant*." *Id*. at 212 (emphasis added). Because it addresses only the Fourth Amendment rights of persons not named in an arrest warrant, *Steagald* did not hold that the subject of an

---

[1]  (...continued)

the arrestee himself lacks standing to challenge an illegal search, then this would "render the *Steagald* rule a virtual nullity." 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.3 (4th ed. 2008). Not surprisingly, therefore, the prevailing view appears to be that a suspect retains a sufficient expectation of privacy to challenge a search where the police lack a reasonable belief that the person to be arrested may be found in the place to be searched. *See, e.g., United States v. Boyd* 180 F.3d 967, 977-78 (8th Cir. 1999); *Valdez v. McPheters,* 172 F.3d 1220, 1225-26 (10th Cir. 1999); *United States v. Edmonds*, 52 F.3d 1236, 1247-48 (3d Cir. 1995).

arrest warrant has a higher expectation of privacy in another person's residence than he does in his own. *E.g., United States v. Underwood*, 717 F.2d 482, 483-84 (9th Cir. 1983) (en banc). Further, nearly every court of appeals to consider the issue has held that law enforcement officers do not need a search warrant in addition to an arrest warrant to enter a third party's residence in order to effect an arrest. *See United States v. Agnew*, 407 F.3d 193, 197 (3d Cir. 2005); *United States v. Kaylor*, 877 F.2d 658, 663 (8th Cir. 1989); *Underwood*, 717 F.2d at 483-84 (9th Cir. 1983); *United States v. Buckner*, 717 F.2d 297, 299-300 (6th Cir. 1983).[2]

Jackson argues that there is no difference between searching a person's home for evidence and searching for a person. This argument conflates the resident's Fourth Amendment interest with that of the arrestee. If officers unlawfully enter a person's home, then that

---

[2] In *United States v. Weems*, 322 F.3d 18, 23 (1st Cir. 2003), the First Circuit suggested that absent consent or exigent circumstances, police *do* require a search warrant as well as an arrest warrant to arrest a suspect in a third party's home. However, the panel in *Weems* also broadens the exigent circumstances exception to the warrant requirement, suggesting that an officer's reasonable belief that an arrestee is inside another's home can constitute exigent circumstances and thus justify a warrantless entry. *Id.* Thus, it appears that there is no practical difference between the First Circuit's understanding of *Steagald*—according to which reasonable belief that a suspect is within a third party's home can constitute exigent circumstances—and that of the other circuits—according to which a separate search warrant is not required.

person may have a civil claim for damages against the officers. If the officers uncover evidence that the resident committed a crime, then the evidence may be suppressed. But again, it would be anomalous if the subject of an arrest warrant had a greater expectation of privacy in another person's home than he had in his own.

Although officers do not need a search warrant to execute an arrest warrant in a third party's home, they do need *some* basis for believing that the suspect is actually present in the home. This court has not addressed what degree of suspicion officers need in order to enter a third party's home to execute an arrest warrant. In *Payton*, the Supreme Court held that an arrest warrant "carries with it the limited authority to enter a dwelling when there is *reason to believe* the suspect is within." 445 U.S. at 602 (emphasis added).

Our sister circuits disagree about what "reasonable belief" actually entails and whether its meaning is different from probable cause. By our count, three circuits have explicitly concluded that reasonable belief requires a lesser degree of knowledge than probable cause. *See United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005); *Valdez v. McPheters*, 172 F.3d 1220, 1227 n.5 (10th Cir. 1999); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995).[3] The

---

[3] The D.C. Circuit has put the count at six, including the Fifth, Eighth and Eleventh Circuits among the courts of appeals to hold that "reasonable belief" requires less than probable cause. *Thomas*, 172 F.3d at 286. However, the relevant cases from these

(continued...)

courts in these cases conclude that the Supreme Court "used a phrase other than 'probable cause' because it meant something other than 'probable cause.'" *Thomas*, 429 F.3d at 286.[4]

Four other circuits have disagreed, holding that "reasonable belief" amounts to the same thing as "probable cause." *See United States v. Hardin*, 539 F.3d 404, 416 n.6 (6th Cir. 2008); *United States v. Barrera*, 464 F.3d 496, 501 (5th Cir. 2006); *United States v. Gorman*, 314 F.3d 1105, 1111 (9th Cir. 2002); *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995). As Judge Clay explained in a concurring opinion, the Supreme Court tends to use phrases like "reasonable grounds for belief" as "grammatical analogue[s]" for probable cause. *United States v. Pruitt*, 458 F.3d 477, 490 (6th Cir. 2006) (Clay, J., concurring) (citing cases). To wit, in *Maryland v. Pringle*, 540 U.S. 366 (2003), the Court appears to use "reasonable belief" to *define* probable

───────────

(...continued)

other circuits simply apply the "reasonable belief" standard without deciding the degree of suspicion that the standard requires.

[4] Although the above-cited cases state that "reasonable belief" is satisfied by something short of probable cause, in all but one of these cases, the courts found that the officers' degree of suspicion satisfied the higher, probable cause standard. *See, e.g., Lauter*, 57 F.3d at 215. The D.C. Circuit's *Thomas* decision was the only case that we have found where a court upheld a search of a third party's residence based on something less than probable cause. Thus, it is at least arguable that the discussion of "reasonable belief" in the other cases was dicta.

cause. *Id.* at 371 ("[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt.").

Were we to reach the issue, we might be inclined to adopt the view of the narrow majority of our sister circuits that "reasonable belief" is synonymous with probable cause. However, we need not decide whether "reasonable belief" requires probable cause or something less than probable cause because in the present case the police had enough evidence to easily satisfy a probable cause standard. The police received a tip that Jackson was staying at Joseph's apartment and that he would be there the following morning. When the police arrived at the apartment, they asked Jackson's girlfriend if Jackson was inside and she nodded yes and started crying. This was more than enough to lead a prudent person to believe that Jackson was inside the apartment when he or she entered. *See Jones v. Webb*, 45 F.3d 178, 181 (7th Cir. 1995) (defining probable cause as existing when the facts and circumstances within a police officer's knowledge are sufficient to warrant a prudent person in such a belief). Thus, we need not decide whether "reasonable belief" can constitute less than probable cause; the police clearly had probable cause in this case.

## B. Jackson's Sentence

Jackson also argues that his sentence was unreasonable. The district court imposed a 96 month sentence, which was more than twice the high end of Jackson's Guidelines range. We review the reasonableness of Jackson's sentence for abuse of discretion. *Gall v. United States*, 128

S. Ct. 586, 591 (2007); *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). No presumption of unreason-ableness attaches to a sentence simply because it falls outside the Guidelines range. *Gall*, 128 S. Ct. at 595.

The principal basis for the enhanced sentence was the court's conclusion that Jackson was dangerous and incorrigible, explaining that a higher than Guidelines sentence was needed "to stop you [Jackson] before you kill somebody or before you get killed." *This* conclusion, in turn, was based primarily on the court's finding that Jackson had used the gun he was convicted of possessing to shoot someone. Recall that although Jackson was ultimately charged with possession of a firearm by a convicted felon, he was arrested pursuant to an arrest warrant for aggravated battery. Roughly two months before his arrest, Jackson was alleged to have shot a man who had apparently made romantic overtures toward his girlfriend, Tyneesha Barbary. An officer witnessed Jackson flee the scene with his hand in his waistband as if he were concealing a gun. Barbary later gave a sworn statement that Jackson was the shooter.[5] And the victim himself identified Jackson as the shooter.

In addition to the evidence that Jackson had used the gun he was charged with possessing to shoot his romantic

---

[5] Jackson makes a great deal of the fact that Barbary testified that she saw Jackson with two different guns, but that the district court apparently misunderstood her testimony and assumed she was referring throughout to the same gun. We agree with the government that the district court's confusion was harmless error.

rival, the district court also noted that Jackson had been convicted of weapons possession on multiple occasions, that he had actually shot people on at least two other occasions and that he had not adjusted well to parole. Further, while Jackson argues that the district court impermissibly focused on charges that were dropped or dismissed, this is an overstatement: Jackson has been *convicted* of multiple violent crimes.

In short, it was not unreasonable for the court to conclude that Jackson is a menace, and therefore that an above-Guidelines sentence was needed to deter further criminal activity. The judgment of conviction and sentence are

AFFIRMED.