In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2627

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN D. RISNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:08-cr-00049—**Robert L. Miller, Jr.**, *Chief Judge.*

ARGUED DECEMBER 2, 2009—DECIDED FEBRUARY 3, 2010

Before BAUER, KANNE, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* After Kevin Risner choked and threatened to kill his girlfriend, she called 911. After an officer arrived she told him that Risner was drunk, armed, and hiding in the basement crawl space of their shared home. Police entered the home and arrested Risner without a warrant. Police reentered the home to take the girlfriend's statement, and eventually removed several guns from the home at her request. The girlfriend

never expressly consented to either of the police entries into her home. Nevertheless, the district court denied Risner's motion to suppress, finding that the girlfriend had impliedly consented to both entries. We affirm.

## I. BACKGROUND

In late January 2008, Deborah Dean called 911 from Kevin Risner's house but hung up before talking to a dispatcher. The Starke County Sheriff's Department responded anyway, as was its policy with all 911 hangups. Deputy Bill Dulin found Dean, Risner's girlfriend and cohabitant, in the front yard wearing a trench coat. She told Dulin that she had called 911 because Risner had been drinking heavily, threatened to kill her, and assaulted and choked her. Dulin observed injuries on Dean's face and neck that appeared to corroborate Dean's story. Dean also told Dulin that she lived in Risner's house, that Risner had several weapons inside, and that Risner had said that he had nothing to lose because he was going to prison anyway. Dean also told Dulin that Risner usually hid in a basement crawl space when police came to the house.

Dulin knocked on the back door but Risner did not answer. Dulin called for backup but did not secure a warrant. With the four additional officers that arrived, Dulin entered the unlocked back door and found Risner, drunk, exactly where Dean said he would be hiding. One of the officers took Risner to jail while the others remained at the house. Dulin asked Dean if they could go inside to take her statement, and Dulin and Dean went

inside together and sat at the kitchen table. Next to the table was Risner's gun cabinet. Dean later asked the officers to remove the guns from the house. Both Dulin and Dean agree that Dean never affirmatively consented to either police entry into her home.

Risner was indicted for possession of a firearm by a convicted felon (Count I) and possession of an unregistered firearm (Count II). Risner filed a motion to suppress, arguing that the officers' entry and seizure of his guns violated the Fourth Amendment. The district court denied the motion after holding an evidentiary hearing. A jury then convicted Risner of Count I. The district court sentenced Risner to 27 months' imprisonment and three years of supervised release. Risner filed a timely appeal.

## II. ANALYSIS

We review the district court's legal conclusions *de novo*, but review its findings of fact for clear error. *United States v. Hernandez-Rivas*, 513 F.3d 753, 758 (7th Cir. 2008). Whether Dean impliedly consented to the police entries into her home is a question of fact to be determined based on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *United States v. Figueroa-Espana*, 511 F.3d 696, 704 (7th Cir. 2007).

A warrantless search violates the Fourth Amendment's protection against unlawful searches and seizures unless an exception to the warrant requirement applies, *United States v. McGraw*, 571 F.3d 624, 628 (7th Cir. 2009), such as receiving a co-tenant's consent to the search, *see United*

*States v. Parker*, 469 F.3d 1074, 1077-78 (7th Cir. 2006). Consent can be express or implied. *See United States v. Renken*, 474 F.3d 984, 987 (7th Cir. 2007) ("[C]onsent in certain cases can be implied in the absence of clear verbal permission."). To determine whether consent was voluntarily given, the court should consider

> "(1) the person's age, intelligence, and education, (2) whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was prompted by repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent."

*McGraw*, 571 F.3d at 628-29 (*quoting United States v. Raibley*, 243 F.3d 1069, 1075-76 (7th Cir. 2001)).

We agree with the district court that Dean impliedly consented to the police entering her home on both occasions. Regarding the first entry, Dean called the police. Although she hung up before speaking with the dispatcher, she willingly spoke with Dulin when he arrived on the scene. She told him that she had called 911 because Risner had attacked her and threatened her life. She also told him that Risner was armed and where he was hiding in the house. Any reasonable person would infer from Dean's communications that she consented to the police entry into her home to arrest Risner. In fact, we have trouble imagining why Dean would have provided Dulin such information if she was not actually requesting that the police enter her home and arrest Risner.

Risner's efforts to distinguish *United States v. Wesela*, 223 F.3d 656 (7th Cir. 2000) and *United States v. Hylton*, 349 F.3d 781, 783 (4th Cir. 2003) are unpersuasive. Although *Wesela* dealt with the scope of consent, the concept of implied consent in that case applies with equal force under the facts before us. In *Wesela*, the wife called 911 because her husband had a gun and threatened to kill her. *Wesela*, 223 F.3d at 659. When the police arrived she told them where to find her husband and the gun. The police arrested the husband, but then reentered the bedroom to search for the gun. This court affirmed the district court's finding that the wife had impliedly consented to the police's search for the gun, even after arresting the husband: "The fact that there was no direct verbal exchange between [the police officer] and [the wife] in which she explicitly said 'it's o.k. with me for you to search the apartment,' is immaterial, as the events indicate her implicit consent." *Id.* at 661. The wife was aware that the search was going on and could have objected, but did not. *Id.*

In *Hylton*, the girlfriend called 911 because she had fought with her boyfriend, who kicked her out of the house. She "advised officers of the specific circumstances *inside* the apartment, telling them that there was a gun in the apartment" and "that the gun was located in the bedroom where she and [the defendant] slept . . . ." 349 F.3d at 786. The Fourth Circuit found that the girlfriend impliedly consented to the police entry into the apartment and search for the gun, because "there would be virtually no other reason for her calling the police and giving them the details of what existed in the apartment." *Id.*

As noted above, Dean hung up after calling 911. The record does not indicate why she hung up, and in any event, she voluntarily communicated with Dulin when he arrived on the scene; the fact that she hung up earlier does not suggest that she did not want police help. She told police that she had been attacked and threatened, and she provided detailed information about the circumstances inside the house, including the exact location of Risner's hiding place. She must have been aware that police were entering her home based on her statements, and she could have objected but did not. There is nothing in the record to suggest that the police overcame her will or that something about her age, intelligence, or experience undermined her ability to impliedly consent to the search. The district court did not clearly err in holding that Dean impliedly consented to the first police entry into her home.

We agree with the district court that under the specific facts of this case Dean impliedly consented to the police re-entering her home to take her statement. It was late January in northern Indiana. The weather and common sense compelled them to move inside to take Dean's statement. Dulin asked her if it was all right that they do so, and she did not object. Although ordinarily mere acquiescence is not enough to show voluntary consent, *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968), we agree with the district court that Dean impliedly consented to the second police entry of her home. There is no evidence that the officers repeatedly requested permission to enter or that the police otherwise compelled Dean's implied consent. *See Renken*, 474

F.3d at 987. That Dean consented to their continued presence in her home is bolstered by her asking that the police remove the guns. Although the entry had already occurred, she obviously did not object to their presence given her desire that they remove the guns. Thus, the district court did not clearly err in finding that Dean impliedly consented to the second police entry into her home.

### III.  CONCLUSION

Because the district court did not clearly err, we AFFIRM.