In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2700

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TERRY L. SABO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:10-cr-21—**Theresa L. Springmann**, *Judge.*

ARGUED DECEMBER 5, 2012—DECIDED JULY 31, 2013

Before MANION and SYKES, *Circuit Judges*, and DARROW, *District Judge.**

DARROW, *District Judge.* The only question presented in this appeal is whether Terry Sabo consented to a search of his residence. We find that his nonverbal actions manifested consent and affirm.

---

* The Honorable Sara Darrow of the United States District Court for the Central District of Illinois, sitting by designation.

## I. Background

In January 2010, two Deputy U.S. Marshals knocked on Terry Sabo's trailer door hoping to locate a fugitive, Sabo's stepson. When Sabo opened the door, both deputies immediately noticed a strong odor of marijuana and heard voices coming from inside the trailer. Sabo acknowledged that his children were inside but denied that his stepson was there. The deputies asked Sabo if he was "smoking dope" with his children in the trailer, to which Sabo responded, "Get the fuck out of here." With that expletive, Sabo slammed the door shut. The deputies backed away from the trailer, moved their car out of sight, and called the local Sheriff's office for assistance. Detective Donald McCune—who knew Sabo—was among the officers that arrived.

McCune knocked on the trailer door and said, "Terry, it's the Sheriff's Department. Open the door." Sabo opened the door and stood in the doorway, physically blocking McCune's entry. McCune asked, "Terry, do you mind if I step inside and talk with you?" Sabo said nothing. Instead, he stepped back and to the side and let the door open. The conversation was casual and McCune did not force his way into the trailer.

Upon Sabo yielding the right of way, McCune entered the trailer and immediately noticed the same odor of marijuana and saw several guns leaning against a wall. Knowing that Sabo was a convicted felon, McCune had him sit on the couch while the guns were secured. McCune's fellow officers swept the trailer looking for

the fugitive but found only Sabo's wife and children. McCune obtained a search warrant and seized marijuana in the subsequent search.

A federal grand jury indicted Sabo for the following offenses: (1) possession with the intent to distribute a controlled substance, (2) possession of a firearm in the furtherance of a drug trafficking crime, and (3) being a convicted felon in possession of a firearm. Sabo filed a motion to suppress the evidence, which the district court denied after an evidentiary hearing. He conditionally pleaded guilty to Counts 1 and 2 and reserved his right to appeal the district court's denial of his motion to suppress.

## II. Discussion

Sabo argues that by entering his trailer without consent, McCune violated his Fourth Amendment right to be secure in his home against unreasonable searches. The Court carefully examines the bases for a government entry into the home because unjustified entry is the "chief evil" against which the Fourth Amendment is directed. *Payton v. New York*, 445 U.S. 573, 585 (1980). In these cases the Court presumes that a warrantless search of a home is unreasonable. *Id.* at 586. But in this case we can move quickly to the well-established exception to both the warrant and the probable cause requirements of the Fourth Amendment: consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

Consent can come in many forms, but it must always be given voluntarily. *United States v. Griffin*, 530 F.2d 739,

742 (7th Cir. 1976). As the district court noted, Sabo does not challenge McCune's entry on the grounds that Sabo's nonverbal response was involuntary, nor does he offer any evidence of duress or coercion. Rather, Sabo only argues that he never consented to McCune entering his residence. As such, the crux of this appeal is whether Sabo's nonverbal response constituted implied consent for McCune to enter Sabo's residence. Whether Sabo impliedly consented to McCune's entry is a question of fact to be determined under the totality of the circumstances, and the trial court's determination will be reversed only if it is clearly erroneous. *See United States v. Risner*, 593 F.3d 692, 694 (7th Cir. 2010) (internal citations omitted); *Griffin*, 530 F.3d at 742.

Implied consent may be manifested verbally or nonverbally. *See Harney v. City of Chi.*, 702 F.3d 916, 925 (7th Cir. 2012). To be sure, one does not consent to the government entering his home by simply answering the door. *Hadley v. Williams*, 368 F.3d 747, 750 (7th Cir. 2004). Here, however, Sabo did not simply answer the door. He stepped back and to the side so that McCune could enter. What is more, Sabo's actions came in direct response to McCune's request to enter. In other words, McCune asked and Sabo answered, albeit nonverbally. We have recently noted that "this court, on more than one occasion, has found that the act of opening a door and stepping back to allow entry is sufficient to demonstrate consent." *Harney*, 702 F.3d at 925 (citing *United States v. Walls*, 225 F.3d 858, 862-63 (7th Cir. 2000) and *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 690 (7th Cir. 2001)). We make the same finding here—Sabo's

nonverbal cue manifested his implied consent for McCune to enter.

For the foregoing reasons, we AFFIRM the judgment of the district court.