In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1641

TEREZ COOK,

*Plaintiff-Appellant,*

*v.*

ANTHONY O'NEILL and TODD BALDWIN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 09-CV-87 — **Patricia J. Gorence**, *Magistrate Judge.*

ARGUED AUGUST 4, 2015— DECIDED SEPTEMBER 23, 2015

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, a prison inmate, filed suit under 42 U.S.C. § 1983 against two Marinette County (Wisconsin) Sheriff's Department detectives, accusing them of having arrested him in violation of his Fourth Amendment rights. He seeks $25,000 in compensatory and $50,000 in punitive damages for the arrest and accompanying detention, seizure of personal property that he claims was worth $10,000, and infliction of emotional distress.

He had committed an ugly home robbery in 2005 and
been arrested nine days later in the apartment of a girlfriend,
later his fiancée, Stacy Thede. Convicted in a Wisconsin state
court of armed robbery, armed burglary, battery, theft of
moveable property, mistreatment of an animal resulting in
the animal's (a dog's) death, and false imprisonment, he was
sentenced to 40 years in prison to be followed by 18 years of
extended supervision.

In the present case, the civil case, the defendant officers
moved for summary judgment on the ground that Thede
had consented to their entry into the apartment, where they
had discovered and arrested Cook. When asked at Cook's
criminal trial whether she'd "let them [the officers] in,"
Thede had testified "Yes," but in the civil case she submitted
an affidavit which states that when she had testified that she
"let them in" she had meant that she "did not tell them to
leave or did not object directly to them, but let them re-
main." The district court granted summary judgment for the
officers on the basis of their defense of consent, rejecting
Thede's affidavit as inconsistent with her testimony at the
criminal trial.

The two detectives from Marinette County, accompanied
by two officers from the Sheboygan City Police Department
who are not defendants in Cook's suit, had arrived at
Thede's apartment house at about 11:00 a.m. on May 31,
2005. The apartment house was in Sheboygan, though the
robbery had occurred in Peshtigo, in Marinette County in
northeastern Wisconsin, more than 150 miles from She-
boygan. That's why the detectives were from Marinette
County but the other officers were from Sheboygan—they

would be familiar with the city and provide security for the detectives.

The detectives wanted to talk to Thede because they'd discovered that Cook's robbery accomplice had been carrying a cellphone when he was arrested and a search of the cellphone had revealed calls to a phone registered to Thede. According to their affidavits, the detectives thought the cellphone might have been used by the other suspect (who turned out to be Cook) on the night of the robbery. At the time, the detectives did not know that suspect's legal name but knew that he went by "BN" (short for "Bad News") and by "Rex," since a witness had reported obtaining gloves and duct tape for "BN" (also known as "Rex") and driving with him to and from the robbery site.

The detectives buzzed for Thede at the building entrance. In response, without asking who they were, she pushed the button in her apartment that enabled entry to the building and met them in the hallway outside the apartment. Explaining that they needed to ask her some questions, they asked her whether there was anyone in the apartment. According to Thede and some contemporary police reports (including the report of one of the two Marinette detectives), she said yes, "a friend." According to the other detective, and to a later affidavit by the detective whose initial report had said that Thede had not named her friend, she had told them that "News" was in the apartment.

Thede asked the detectives in the hall whether she could reenter her apartment and change out of her pajamas before talking further with them. They said she could. She reentered, and either closed the door to the apartment or left it ajar. The officers opened the door (or if it was already slight-

ly open, opened it further) in order to be able to see into the apartment. They heard her talking to someone in another room, and while standing in the doorway without as yet having entered the apartment they yelled that she should bring the person she was talking to (who was Cook, with whom she was talking in a bedroom) into the living room where the officers could see him. When he appeared, they recognized him as the robbery suspect. They then entered the apartment. Within minutes the Sheboygan police officers arrested him after a warrant check revealed an outstanding arrest warrant against him for violating parole.

The district court refused to consider Thede's affidavit, which we mentioned earlier, as evidence in this case on the ground that it was a "sham." A "sham affidavit" is an affidavit that is inadmissible because it contradicts the affiant's previous testimony (here, testimony Thede had given in the criminal prosecution of Cook) unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 759 (7th Cir. 2006); *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168–71 (7th Cir. 1996). Thede's affidavit was amplification rather than contradiction, and so was not within the "sham" exclusionary rule. But the affidavit doesn't help Cook's case. It acknowledges that Thede agreed to speak with the officers, and although it says that she agreed to speak with them in the hallway it must have been obvious to her that the conversation was more likely to take place in the apartment than in the hallway outside it. What reason would she have to talk to four police officers in a public corridor—except to conceal Cook? But whether she consented to talk to them only in the hallway is irrelevant, because no conversation took place; it would have been about Cook's

whereabouts, which the officers discovered the moment they saw him. Thede's affidavit was therefore inadmissible, though not because it was a sham affidavit but because it was irrelevant.

The officers' decision to hold open the door to the apartment so that they could see into the living room while Thede was getting dressed elsewhere in the apartment was simple prudence and thus within the scope of the "exigent circumstances" (i.e., emergency) exception to the requirement of a warrant. See, e.g., *Kentucky v. King*, 131 S. Ct. 1849, 1856–63 (2011). Even if she didn't identify the "friend" in the apartment as "News" (a question on which the evidence is in conflict), given the connection, evidenced by cellphone records, between her and Cook's accomplice, the "friend" in the apartment could well be "BN" (that is, Cook)—a violent, dangerous criminal, who might well be (though it turned out that he wasn't) armed and dangerous. Had the officers waited for Thede to get dressed and open the door to the apartment they might have found themselves six inches from the barrel of a gun. As in protective-sweep cases, the officers were justified in taking reasonable precautions to minimize the danger to themselves. *Maryland v. Buie*, 494 U.S. 325, 333–35 (1990). Had they out of an abundance of caution instead removed themselves from potential danger, the suspect might have escaped. Compare *Minnesota v. Olson*, 495 U.S. 91, 100–01 (1990).

We thus needn't decide whether, as the district court found, Thede consented to the officers' entry into her apartment. Their opening the door (without entering) was prudent given the potential danger that the "friend" might pose. Once they saw him, they knew he was the suspect in the

robbery that they were investigating, and it would be absurd to think that they should have turned and left and applied for a search warrant. Think of what might have ensued had they been required to run off to get a search warrant before they could lawfully enter the apartment and arrest Cook. As soon as they left to get the warrant he would have split. True, some of the four officers might have remained in the hallway (while the others went to get a search warrant) and followed Cook as he fled. But he might have shaken off the tail, and still be at large today. Once he had left the apartment and they recognized him as the robbery suspect, they would have had probable cause to arrest him (or at the least to stop him long enough to do a warrant check), and they could have done this without a search warrant because the hallway was a public space. But he might not have remained there. He might have outrun them. Moreover, Thede's apartment was on the second floor; Cook could have jumped out of a back window and fled without being seen by any of the officers.

Cook's lawyer makes much of the fact that when the police saw Cook, Thede became upset and the police pulled her into the hallway to prevent her from interfering with their conversation with Cook. We can't see the relevance of this contretemps; Thede is not the plaintiff.

Now suppose Thede and Cook had been co-owners or co-occupants of the apartment and one or both of them had objected to entry by the police, and in addition that there had been no emergency justifying entry. Would that have changed the outcome of this case? No. The warrant to arrest Cook for violating parole is the key to this conclusion. The Supreme Court said in *Payton v. New York*, 445 U.S. 573, 602–

03 (1980), "that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." That was a dictum, but a considered rather than a casual one, and the lower courts including our own have treated it as a rule. See, e.g., *United States v. Jackson*, 576 F.3d 465, 468–69 (7th Cir. 2009); *United States v. Thomas*, 429 F.3d 282, 285–86 (D.C. Cir. 2005); *United States v. Hill*, 649 F.3d 258, 262–64 (4th Cir. 2011); *United States v. Hardin*, 539 F.3d 404, 423–24 (6th Cir. 2008).

It's true that the warrants involved in the *Payton* case were for felonies, whereas the warrant in our case was for a parole violation, which might not be a felony (the record is silent on this point). But persons on parole have a diminished right of privacy, because parole is a form of custody, and so an arrest warrant for violation of parole would entitle officers to enter the parolee's home to arrest him. *United States v. Pelletier*, 469 F.3d 194, 200 (1st Cir. 2006); see also *United States v. Hollis*, 780 F.3d 1064, 1068–69 (11th Cir. 2015); *United States v. Collins*, 699 F.3d 1039, 1041–42 (8th Cir. 2012); *United States v. Thomas*, *supra*, 429 F.3d at 285–86. Anyway Cook was not a resident of Thede's apartment, and obviously the subject of an arrest warrant has no greater expectation of privacy if he is visiting someone rather than being at

home. *United States v. Jackson, supra,* 576 F.3d at 467–68; see also *United States v. Underwood,* 717 F.2d 482, 484 (9th Cir. 1983) (en banc).

The arrest warrant was all that the police needed in order to be justified in arresting Cook (setting to one side their justification based on an emergency situation). They didn't know there was a warrant for his arrest, however, and we must consider whether that should matter. We think not, though not because of the "collective knowledge" doctrine, which allows an officer to stop, search, or arrest a suspect at the direction of his superiors even if the officer lacks first-hand knowledge of facts that would justify the action. See *United States v. Hensley,* 469 U.S. 221, 232–33 (1985). The officers who arrested Cook had not been told to arrest him because of the warrant outstanding against him; had they been told, they could have arrested him lawfully without knowing the basis on which the warrant had been issued. But what they did in arresting Cook was exactly what they would have done had they known about the warrant. They did the right thing without knowing it was the right thing; and since they did the right thing Cook has no valid objection.

Suppose there are outstanding arrest warrants for two persons, *X* and *Y*. One police officer has the warrant for *X*; he doesn't know there is a warrant outstanding for *Y* as well. The officer arrests *Y*, mistakenly thinking that he is *X*. Is that a false arrest? Or is it serendipity? It's the latter, and should not be punished by awarding damages to *Y*. Cf. *Patton v. Przybylski,* 822 F.2d 697, 699–700 (7th Cir. 1987). Notice the analogy to the "inevitable discovery" doctrine of *Nix v. Wil-*

*liams*, 467 U.S. 431, 443–44 (1984); see *United States v. Witzlib*, 2015 WL 4664340, at *1–2 (7th Cir. Aug. 7, 2015).

Officers who enter premises without reasonable belief that they will find the person for whom they have a warrant will still be liable when their quarry turns out not to be present, and that should be sufficient to discourage officers from entering homes when they have no basis to believe they'll find the suspect there. But that is beside the point of the present case. The officers didn't enter Thede's apartment until they saw Cook and thus knew they'd found their suspect.

All this to one side, there is no basis for any of the damages that Cook seeks; and damages are the only relief that he does seek. "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006). And that is when there's no warrant—here there was one. Once Cook acknowledged to the officers that his street names were "BN" and "Rex," there was additional probable cause to arrest him for the robbery. As for damages for loss of personal property of Cook seized by the police and not returned, that property was seized after Thede, following Cook's arrest, had consented to a search of the apartment. As it was her apartment, not Cook's (he was not a joint tenant), she had authority to consent. As for damages for emotional distress caused by the entry of the police into the apartment, there is no basis for thinking that the arrest caused Cook more emotional distress than had the police entered clutching the arrest warrant. Given Cook's recent commission of a violent robbery, moreover, it is hard to believe that the sight of police officers caused him emotional

distress; he is not the sensitive plant of which Shelley wrote in a poem of that name: "A Sensitive Plant in a garden grew,/ And the young winds fed it with silver dew,/ And it opened its fan-like leaves to the light,/ And closed them beneath the kisses of Night."

Nominal or punitive damages are out of the question, too, given the arrest warrant. *Any* award of damages to Cook arising out of the entry of the police into the apartment that was not his would be a pure windfall. See *Habitat Education Center v. U.S. Forest Service*, 607 F.3d 453, 460–61 (7th Cir. 2010); *Hessel v. O'Hearn*, 977 F.2d 299, 302–05 (7th Cir. 1992).

The entry (if that is how peeking into the living room should be described) was justified by the need to protect the police officers from a possible assault by Cook; and at worst the entry was a harmless error because of the existence of the warrant and the absence of any possible entitlement to damages. The judgment for the defendants is therefore

AFFIRMED.

HAMILTON, *Circuit Judge*, concurring in the judgment. I agree we must affirm the judgment. All members of the panel agree we should affirm on a ground not briefed in this court: there was a warrant for Cook's arrest, which meant the officers' entry was justified even though they did not know about the warrant at the moment they entered Stacy Thede's apartment. See *Payton v. New York*, 445 U.S. 573, 602–03 (1980); *United States v. Jackson*, 576 F.3d 465, 468–69 (7th Cir. 2009). On other issues addressed in the majority opinion, however, my views differ.

After reviewing the original briefs filed while plaintiff Cook was acting pro se, another panel of this court ordered recruitment of counsel and briefing on two issues. The first was the appropriate standard of review for the district court's decision to exclude Thede's affidavit explaining that she did not give her consent to the officers to enter her apartment. The second was whether, if Thede's affidavit is considered, the record supports denial of defendants' motion for summary judgment, and we directed the parties to address the significance of *Gerald M. v. Conneely*, 858 F.2d 378, 385 (7th Cir. 1988), and cases following it. As requested, attorney Barack S. Echols and his colleagues at Kirkland & Ellis have provided able representation to Cook, for which the court is grateful.

I agree we do not need to decide the standard-of-review question here. Under any standard, I agree with the majority's conclusion that Thede's affidavit was not a "sham" on the issue of consent for the police to enter her apartment. Ante at 4. Further explanation of that conclusion is needed, though.

During Cook's criminal trial, Thede had been asked just one leading question on the issue of consent to enter:

Q  Did the detectives come in the apartment?

A  Yes.

Q  You let them in?

A  Yes.

In her affidavit in this civil case, Thede explained that she had meant that once the police officers had entered her apartment without her consent, she did not tell them to leave and did not object directly to their entry. She had not intended to give them permission to enter. She had simply not objected after they had entered without her permission. Thede testified in her affidavit that she told the detectives she was willing to talk with them in the hallway outside her door, that she closed the door when she went back in the apartment to change clothes, and that she never consented to allow them in.

Merely answering the door does not give police consent to enter a home. *United States v. Sabo*, 724 F.3d 891, 893 (7th Cir. 2013), citing *Hadley v. Williams*, 368 F.3d 747, 750 (7th Cir. 2004) (genuine issue of fact on consent to enter home required reversal of summary judgment for officer on Fourth Amendment claim); cf. *United States v. Risner*, 593 F.3d 692, 694–95 (7th Cir. 2010) (consent to enter implied when resident called 911 for emergency help). Closing the door was a clear signal the officers did not have Thede's consent to enter. Thede's affidavit is sufficient to distinguish this case from *Gerald M.*, 858 F.2d at 385, and thus to defeat summary judgment on both the merits and qualified immunity.

It is also well established, however, that a witness cannot create a genuine issue of material fact for purposes of summary judgment by contradicting her unequivocal prior testimony, at least not without a good explanation. E.g., *Adelman-*

*Tremblay v. Jewel Cos.*, 859 F.2d 517, 520–21 (7th Cir. 1988). Thede's trial testimony that she "let" the officers in was not unequivocal testimony, at least on the constitutional issue that arises in this civil suit.

To say that a person has "let" someone else enter her residence can cover a broad spectrum of actions and intentions. It could mean that the resident warmly welcomed the visitor. It could also mean only that the resident did not try to obstruct physically an unwelcome visitor's entry. Or it could mean anything in between those two extremes.

The consent needed to allow police to enter a residence without a warrant lies along that continuum. The issue is whether, in light of the totality of circumstances, the resident indicated voluntary consent for the police to enter. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Sabo*, 724 F.3d at 893–94 (resident gave implied consent by answering door and, in response to officer's request to enter, stepping back and to the side to allow officer to enter); *United States v. Risner*, 593 F.3d 692, 694 (7th Cir. 2010).

In Cook's criminal trial, there was no effort to pin Thede down to specific facts that would have placed her account at a specific point on that continuum between a warm welcome and coercion. That's not surprising. Consent simply did not matter in that trial. (In their own testimony in the criminal trial, the officers did not even address the question of consent.) Thede was thus entirely within her rights in explaining in the affidavit what she had meant in her vague trial testimony on the point.

The sham doctrine must be applied with caution. It's too easy otherwise for a district court to start making credibility

determinations as part of the summary judgment process: "Few honest witnesses testify at any length without at least occasional lapses of memory or needs for correction or clarification." *Castro v. DeVry University, Inc.*, 786 F.3d 559, 571 (7th Cir. 2015); accord, e.g., *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1169–70 (7th Cir. 1996) (noting need for caution: affidavit can be excluded as sham only where witness has given "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact"); *Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir. 1999) (allowing defense witness's affidavit to change deposition testimony after witness consulted relevant records); see also *Moll v. Telesector Resources Group, Inc.*, 760 F.3d 198, 205–06 (2d Cir. 2014) (sham doctrine did not bar witness's affidavit explaining earlier testimony); Fed. R. Civ. P. 30(e) (deponent must be allowed 30 days to review transcript and to make changes in substance or form of testimony).

Thede's unexplained answer to one vague question in the criminal trial is just the sort of testimony that can properly be explained by a more detailed affidavit. The district court erred by granting summary judgment on the theory that the officers had consent to enter Thede's apartment, and the majority does not find otherwise.[1]

I respectfully disagree with the majority's view that the officers were entitled to summary judgment on the theory that exigent circumstances justified their entry into the apartment

---

[1] The majority's statement that Thede's affidavit was "irrelevant," ante at 5, is difficult to square with the defendants' motion for summary judgment and the district court's decision that we are reviewing. Both relied exclusively on the issue of consent, based entirely on Thede's ambiguous trial testimony.

without either a warrant or consent. That theory was rejected by the district court and was not briefed for our court. In fact, the detectives had filed an earlier motion for summary judgment based on exigent circumstances. The district court denied that motion. See *Cook v. O'Neill*, No. 09-CV-87, Dkt. 55 (E.D. Wis. March 7, 2011).

The officers' actions were not consistent with a theory of exigent circumstances. Defendant Baldwin testified that Thede told them someone named "News" (a version of Cook's nicknames, "Bad News" or "BN") was in the apartment, so that Baldwin was immediately concerned for the safety of the officers and the public. Baldwin's account is disputed, though, and other evidence shows that the officers then allowed Thede to return to the apartment to change her clothes.

That is not the response of officers who believe that exigent circumstances justify immediate entry to deal with an imminent threat to officer safety. Nor was there any indication that Thede or anyone else was in danger or that evidence was about to be destroyed. See *Kentucky v. King*, 563 U.S. 452, —, 131 S. Ct. 1849, 1856–57 (2011) (summarizing exigent circumstances exception); *Hawkins v. Mitchell*, 756 F.3d 983, 993 (7th Cir. 2014) (rejecting exigent circumstance rationale as a matter of law even where officers "arrived at a disorderly scene" and suspect was known to "get[] violent sometimes").

Unjustified entry into a home is the "chief evil" against which the Fourth Amendment was directed, *Sabo*, 724 F.3d at 893, quoting *Payton v. New York*, 445 U.S. 573, 585 (1980), so the bar for exigent circumstances is higher than what was shown by the undisputed evidence here. See, e.g., *United States v. Venters*, 539 F.3d 801, 807–09 (7th Cir. 2008) (warrantless entry justified where officers knew that children had been

in house for several days where adults were manufacturing methamphetamine, posing great risk to bystanders, but court emphasized narrowness of exigent circumstances finding). In my view, the district court was correct to deny summary judgment on a theory of exigent circumstances. The majority errs by reversing that determination and stretching the concept too far, especially without briefing and argument on the theory.

In the end, however, I agree we must affirm summary judgment for the defendants. If the facts were as plaintiff contends, the officers were lucky. It turned out there was already an active warrant for plaintiff's arrest for a parole violation, even though the defendant officers did not know about it. See *United States v. Jackson*, 576 F.3d 465, 468 (7th Cir. 2009). I see no reason not to give the officer-defendants the benefit of the *Jackson* approach despite their lack of knowledge. If Thede herself, on the other hand, were asserting a Fourth Amendment claim, on this record she would be entitled to a jury trial.