HAMILTON, Circuit Judge,
concurring in the judgment.
I agree we must affirm the judgment. All members of the panel agree we should affirm on a ground not briefed in this court: there was a warrant for Cook’s arrest, which meant the officers’ entry was justified even though they did not know about the warrant at the moment they entered Stacy Thede’s apartment. See Payton v. New York, 445 U.S. 573, 602-03, *302 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); United States v. Jackson, 576 F.3d 465, 468-69 (7th Cir.2009). On other issues addressed in the majority opinion, however, my views differ.
After reviewing the original briefs filed while plaintiff Cook was acting pro se, another panel of this court ordered recruitment of counsel and briefing on two issues. The first was the appropriate standard of review for the district court’s decision to exclude Thede’s affidavit explaining that she did not give her consent to the officers to enter her apartment. The second was whether, if Thede’s affidavit is considered, the record supports denial of defendants’ motion for summary judgment, and we directed the parties to address the significance of Gerald M. v. Conneely, 858 F.2d 378, 385 (7th Cir.1988), and cases following it. As requested, attorney Barack S. Echols and his colleagues at Kirkland & Ellis have provided able representation to Cook, for which the court is grateful.
I agree we do not need to decide the standard-of-review question here. Under any standard, I agree with the majority’s conclusion that Thede’s affidavit was not a “sham” on the issue of consent for the police to enter her apartment. Ante at 298. Further explanation of that conclusion is needed, though.
During'Cook’s criminal trial, Thede had been asked just one leading question on the issue of consent to enter:
Q Did • the detectives come in the apartment?
A Yes.
Q You let them in?
A Yes.
In her affidavit in this civil case, Thede explained that she had meant that once the police officers had entered her apartment without her consent, she did not tell them to leave and did not object directly to their entry. She had not intended to give them permission to enter. She had simply not objected after they had entered without her permission. Thede testified in her affidavit that she told the detectives she was willing to talk with them in the hallway outside her door, that she closed the door when she went back in the apartment to change clothes, and that she never consented to allow them in.
Merely answering the door does not give police consent to enter a home. United States v. Sabo, 724 F.3d 891, 893 (7th Cir.2013), citing Hadley v. Williams, 368 F.3d 747, 750 (7th Cir.2004) (genuine issue of fact on consent to enter home required reversal of summary judgment for officer on Fourth Amendment claim); cf. United States v. Risner, 593 F.3d 692, 694-95 (7th Cir.2010) (consent to enter implied when resident called 911 for emergency help). Closing the door was a clear signal the officers did not have Thede’s consent to enter. Thede’s affidavit is sufficient to distinguish this case from Gerald M., 858 F.2d at 385, and thus to defeat summary judgment on both the merits and qualified immunity.
It is also well established, however, that a witness cannot create a genuine issue of material fact for purposes of summary judgment by contradicting her unequivocal prior testimony, at least not without a good explanation. E.g., Adelman-Tremblay v. Jewel Cos., 859 F.2d 517, 520-21 (7th Cir.1988). Thede’s trial testimony that she “let” the officers in was not unequivocal testimony, at least on the constitutional issue that arises in this civil suit.
To say that a person has “let” someone else enter her residence can cover a broad spectrum of actions and intentions. It could mean that the resident warmly welcomed the visitor. It could also mean only that the resident did not try to obstruct physically an unwelcome visitor’s entry. *303 Or it could mean anything in between those two extremes.
The consent needed to allow police to enter a residence without a warrant lies along that continuum. The issue is whether, in light of the totality of circumstances, the resident indicated voluntary consent for the police to enter. See Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Sabo, 724 F.3d at 893-94 (resident gave implied consent by answering door and, in response to officer’s request to enter, stepping back and to the side to allow officer to enter); United States v. Risner, 593 F.3d 692, 694 (7th Cir.2010).
In Cook’s criminal trial, there was no effort to pin Thede down to specific facts that would have placed her account at a specific point on that continuum between a warm welcome and coercion. That’s not surprising. Consent simply did not matter in that trial. (In their own testimony in the criminal trial, the officers did not even address the question of consent.) Thede was thus entirely within her rights in explaining in the affidavit what she had meant in her vague trial testimony on the point.
The sham doctrine must be applied with caution. It’s too easy otherwise for a district court to start making credibility determinations as part of the summary judgment process: “Few honest witnesses testify at any length without at least occasional lapses of memory or needs for correction or clarification.” Castro v. DeVry University, Inc., 786 F.3d 559, 571 (7th Cir.2015); accord, e.g., Bank of Illinois v. Allied Signal Safety Restraint Systems, 75 F.3d 1162, 1169-70 (7th Cir.1996) (noting need for caution: affidavit can be ex-eluded as sham only where witness has given “clear answers to unambiguous questions which negate the existence of any genuine issue of material fact”); Maldonado v. U.S. Bank, 186 F.3d 759, 769 (7th Cir.1999) (allowing defense witness’s affidavit to change deposition testimony after witness consulted relevant records); see also Moll v. Telesector Resources Group, Inc., 760 F.3d 198, 205-06 (2d Cir. 2014) (sham doctrine did not bar witness’s affidavit explaining earlier testimony); Fed.R.Civ.P. 30(e) (deponent must be allowed 30 days to review transcript and to make changes in substance or form of testimony).
Thede’s unexplained answer to one vague question in the criminal trial is just the sort of testimony that can properly be explained by a more detailed affidavit. The district court erred by granting summary judgment on the theory that the officers had consent to enter Thede’s apartment, and the majority does not find otherwise.[1]
I respectfully disagree with the majority’s view that the officers were entitled to summary judgment on the theory that exigent circumstances justified their entry into the apartment without either a warrant or consent. That theory was rejected by the district court and was not briefed for our court. In fact, the detectives had filed án earlier motion for summary judgment based on exigent circumstances. The district court denied that motion. See Cook v. O’Neill, No. 09-CV-87, Dkt. 55 (E.D.Wis. March 7, 2011).
The officers’ actions were not consistent with a theory of exigent circumstances. Defendant Baldwin testified that Thede *304 told them someone named “News” (a version of Cook’s nicknames, “Bad News” or “BN”) was in the apartment, so that Baldwin was immediately concerned for the safety of the officers and the public. Baldwin’s account is disputed, though, and other evidence shows that the officers then allowed Thede to return to the apartment to change her clothes.
That is not the response of officers who believe that exigent circumstances justify immediate entry to deal with an imminent threat to officer safety. Nor was there any indication that Thede or anyone else was in danger or that evidence was about to be destroyed. See Kentucky v. King, 563 U.S. 452, 459-62, 131 S.Ct. 1849, 1856-57, 179 L.Ed.2d 865 (2011) (summarizing exigent circumstances exception); Hawkins v. Mitchell, 756 F.3d 983, 993 (7th Cir.2014) (rejecting exigent circumstance rationale as a matter of law even where officers “arrived at a disorderly scene” and suspect was known to “get[ ] violent sometimes”).
Unjustified entry into a home is the “chief evil” against which the Fourth Amendment was directed, Sabo, 724 F.3d at 893, quoting Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), so the bar for exigent circumstances is higher than what was shown by the undisputed evidence here. See, e.g., United States v. Venters, 539 F.3d 801, 807-09 (7th Cir.2008) (warrantless entry justified where officers knew that children had been in house for several days where adults were manufacturing methamphetamine, posing great risk to bystanders, but court emphasized narrowness of exigent circumstances finding). In my view, the district court was correct to deny summary judgment on a theory of exigent circumstances. The majority errs by reversing that determination and stretching the concept too far, especially without briefing and argument on the theory.
In the end, however, I agree we must affirm summary judgment for the defendants. If the facts were as plaintiff contends, the officers were lucky. It turned out there was already an active warrant for plaintiffs arrest for a parole violation, even though the defendant officers did not know about it. See United States v. Jackson, 576 F.3d 465, 468 (7th Cir.2009). I see no reason not to give the officer-defendants the benefit of the Jackson approach despite their lack of knowledge. If Thede herself, on the other hand, were asserting a Fourth Amendment claim, on this record she would be entitled to a jury trial.

. The majority's statement that Thede's affidavit was "irrelevant,” ante at 299, is difficult to square with the defendants’ motion for summary judgment and the district court's decision that we are reviewing. Both relied exclusively on the issue of consent, based entirely on Thede’s ambiguous trial testimony.